## KUHN v. DOWNS.
### No. 2768.

Court of Civil Appeals of Texas. Waco.
Jan. 15, 1948.

Rehearing Denied Feb. 5, 1948.

Strickland, Ewers & Wilkins, of Mission, for appellant.

Charles E. Thompson, of McAllen, and Luther Hughes, of Weslaco, for appellee.

LESTER, Chief Justice.

This suit was instituted by A. L. Downs against Clayton C. Kuhn, same being based upon a formal statutory plea of trespass to try title, to which the defendant filed a plea of not guilty. The parties will be referred to as they appeared in the trial court.

The facts in this case show that the plaintiff's wife, Mrs. Sara Downs, departed this life in April, 1942; that she and plaintiff had been married for many years. She left a will in which she devised all of her property to the plaintiff. Plaintiff took his wife's remains to Council Bluffs, Iowa, for interment. The defendant, who was then in his early forties and a nephew of Mrs. Downs, deceased, attended the funeral, and while the funeral was in progress he warned the plaintiff a couple of times to look out for designing people who would want to take his property away from him; and before plaintiff left Council Bluffs for his return trip to Texas the defendant told him about his father-in-law, whose second wife had sued him and that she and her lawyer were about to "break him up," and advised the plaintiff to put his property in such position that he would not lose it. In October, 1942, the defendant and his wife paid a ten day visit to the plaintiff, and before leaving, by urging and insisting, he induced the plaintiff to execute certain instruments, by the terms of which he placed his property in such a position that the defendant and his cousin would come into possession of it at the death of the plaintiff. On Saturday morning, October 17th, which was the last day of their visit, the defendant succeeded in prevailing upon the plaintiff in going to his lawyer's office and having a deed prepared conveying the property to him, and also, in connection with the deed, a trust or collateral agreement was drawn up which provided that the plaintiff was desirous of equally dividing all of his estate (except as to a gift to the Presbyterian Church in Weslaco, Texas) between his wife's two nephews, William Hugh Kuhn, about seventeen years of age, and the defendant, Clayton C. Kuhn, of Council Bluffs, Iowa, and further providing that upon the death of the plaintiff any of the property so conveyed to said Clayton C. Kuhn then standing in his name or being in his possession should be divided equally

between the said Clayton C. Kuhn and William H. Kuhn. The parties did not wait in the lawyer's office during the preparation of the instruments but left and returned in the afternoon, when plaintiff signed and acknowledged them before said attorney, who retained possession of the deed and the original of the collateral agreement but delivered to the defendant a copy of said agreement. The attorney was going to Edinburg the following Monday and the defendant instructed him to take the deed over to Edinburg and have it recorded. Evidently being satisfied that he had accomplished his purpose, the defendant and his wife departed for their home the same afternoon, and the next morning the plaintiff went to the attorney and told him not to have the deed recorded, that he was not going to let the deal go through; that he never intended for it to go through. As a result of such instruction the attorney did not have the deed recorded, but has retained possession of the same. Upon learning of the refusal of the attorney to have said deed recorded, the defendant then filed for record a copy of the collateral agreement.

■ One of the main issues in this case is whether there was a delivery of the deed in question. It has been held in this state that "what constitutes a delivery of a deed essential to pass title is one of law, but whether there has been in fact a delivery is an issue of fact." In determining whether a deed has been delivered, the intention of the grantor is a very material factor to be decided, so that if there was no intention on the part of the plaintiff that the deed should be delivered, then the transaction between the parties was incomplete and there was no passing of the title. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Cohen v. Cohen, Tex.Civ.App., 171 S.W.2d 908; 14 T.J., p. 821, sec. 59; Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661, 5 A.L.R. 1660, point 1; Brown v. Rodgers, Tex.Civ.App., 248 S.W. 750.

■■ The mere fact that the plaintiff executed the instruments in question and left them with his attorney, did not resolve the question of delivery to one of law, but it was an issue of fact to be determined by the trial judge, who tried the case without the aid of a jury. The court filed findings of fact and conclusions of law, and among them it found: "That the plaintiff did not intend that said deed should be delivered," and such finding, if based upon sufficient evidence, is binding upon this court.

■ After reviewing the facts and circumstances disclosed by the record in this case, we have come to the conclusion that the finding of the trial court has ample support in the evidence. The record reveals that plaintiff was an old man over seventy-five years of age, who had recently suffered the misfortune of losing his companion of many years, and, as said by the plaintiff, while the funeral was "going on" the defendant began talking about the property and said twice: "You look out for the outside world." The visit made by the defendant and his wife to the plaintiff in October, 1942, apparently was for the sole purpose of having the plaintiff to place his property so that he and his cousin would come into possession of it at his death. On this visit the defendant and his wife arrived on October 7th and departed on the evening of October 17th, and concerning this visit we quote from the testimony of the plaintiff as follows:

"Q. Did he have any discussion with you about it (the property)? A. Yes.

"Q. Did he mention the execution or preparation of these papers only one time, or did he mention them a number of times? A. A number of times and then he suggested that we go up to Mr. Hughes.

"Q. Had you told him that Mr. Hughes was your lawyer? A. Yes.

"Q. Well what was the nature of those discussions? A. Well just that he wanted to look out for my interest all the time, he wanted to fix it so I would not get broke up or busted up by women or things of that kind."

He testified that the defendant told him about his father-in-law marrying the second time and being sued by his wife; that she and her lawyer were about to "break him." The defendant did not take the witness stand in his own behalf but filed certain

admissions upon request of the plaintiff. Some of said admissions were that he advised the plaintiff to put his property in such position that he would not lose it, and that in the lawyer's office, when the papers were ready to be signed, he again stated that the only purpose of such instruments was to protect the plaintiff and his property from designing persons; that he paid the plaintiff nothing of value for the execution of the papers; that he did not pay the lawyer for his services or the recording fee; that the plaintiff, according to his version, was to defray all of such expenses, and that he never did have possession of the deed in question; that he did suggest that the first wife of his father-in-law, Mr. Horn, died and that a divorce proceeding was had between him and his second wife, which was very expensive in property to his father-in-law. Mr. Hughes, the attorney, testified that the defendant and his wife came to his office with the plaintiff; that he was instructed to draw up the instruments in question; that the defendant did all of the talking and the plaintiff just nodded his head as if in acquiescence; that he did not see the plaintiff by himself until after the deed was signed by the plaintiff; that "every time I saw him Mr. Kuhn was with him"; that the defendant suggested that he, the attorney, take the deed to Edinburg the following Monday and have it recorded; that early the next morning the plaintiff came to him and told him: "Don't you record that deed. Don't you take it to Edinburg with you. I am not going to let that deed go through on there; I do not intend for it to go through, I never did intend for it to go through." Plaintiff further testified as follows:

"Q. Did you go back and see Mr. Hughes after that? A. I went back and told him not to have that paper recorded.

"Q. Why did you tell Mr. Hughes not to record that instrument? A. I had pressure on me all the time.

"Q. Who was that pressure from? A. From Clayton Kuhn.

"Q. Now, did you voluntarily execute these instruments and intend to put them in control of Mr. Kuhn? A. When I signed that I intended all of the time to stop it.

"Q. You intended to stop it? A. Yes.

"Q. When you got away from Clayton Kuhn did you go up and stop it? A. I came up and told Mr. Hughes to stop it.

"Q. Was that your intention all of the time? A. Yes sir."

He also testified that he did not remember that he told Mr. Hughes to record the deed.

So we think that it can readily be seen that the plaintiff was dominated by the defendant and, as he says, "was under pressure from him," and as a result of such situation he signed the papers in question against his will. The fact that he put the defendant off until the last day of his visit to sign the papers, and the fact that he knew that the deed could not be recorded until the following Monday, and the further fact that the plaintiff went to his lawyer as soon as he was relieved of his bondage and told him not to carry the deed to Edinburg, that he never intended for the deed to be recorded, and the evidence concerning the conduct of the defendant, are all facts and circumstances properly admitted and considered by the court in passing upon the question as to whether the plaintiff intended that the deed should or should not be delivered. The court having found as a fact that plaintiff did not intend that the deed should be delivered, and such finding, as we think, being based upon sufficient evidence, it is therefore binding upon the defendant.

The defendant raises other propositions, but if there was no delivery of the deed, they all become immaterial.

Believing that the trial court rendered the proper judgment in this case, its judgment is therefore affirmed.