Affirmed in part; Reversed and Remanded in part, and Opinion filed July
28, 2005









Affirmed in part; Reversed and Remanded in part, and
Opinion filed July 28, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00870-CV

____________

 

ROSS M.
CULLINS, SR., AND DANDY RUTH CULLINS,

Appellants/Cross Appellees

 

V.

 

JONATHAN
B. FOSTER, Appellee/Cross Appellant

 

___________________________________________________________________

 

On Appeal from the 127th District Court

Harris County, Texas

Trial Court Cause No. 02-26560

___________________________________________________________________

 

O P I N I O N

This case involves a boundary
dispute between appellants/cross-appellees, Ross M. Cullins, Sr., and Dandy
Ruth Cullins, and appellee/cross-appellant, Jonathan B. Foster.  The Cullinses sued Foster, asserting claims for
adverse possession, mistake, and trespass. 
Foster counterclaimed, asserting claims for trespass to try title,
trespass, conversion, and violation of Texas Natural Resources Code section
151.051.[1]








The trial court granted two partial summary
judgments resolving all liability issues against the Cullinses and in favor of
Foster.  Following a jury trial on Foster=s damages
and attorney=s fees, the trial court rendered
judgment on the jury=s damages
verdict, but increased the jury=s award
of attorney=s fees.

Determining
Foster did conclusively prove he had title to the disputed parcel
of land by the time of trial, we affirm the judgment to the extent it granted
Foster possession of, and title to, the disputed parcel.  We also affirm the judgment against the
Cullinses on all their claims.

Determining
Foster did not conclusively prove he had title to the disputed
parcel of land at the time the Cullinses committed the allegedly injurious acts
giving rise to Foster=s remaining claims, we reverse the judgment as to those
claims.  We also reverse that part of the
judgment awarding Foster attorney=s fees.  We sever these claims and remand them to the
trial court.[2]

I. 
Factual and Procedural Background








In November 1995, the Cullinses purchased
approximately one acre of land from Billie Selena Sepulvado Foster (Billie
Foster), Foster=s
stepmother.  According to the legal
description attached to the deed, the property has boundaries of approximately
186 feet on the north and south, and approximately 233 feet on the east and
west.[3]  At the time of the sale, Billie Foster owned
the property immediately to the east.  A
chain link fence ran parallel and to the east of the property the Cullinses
purchased, cutting across the Cullinses= property
at the southeast corner.  The fence
apparently connected with fences to the north and south of the purchased
property.  The Cullinses claim that, at
the time of sale, they believed they were purchasing all of the property
contained within the fences.

In December 1995, Ross Cullins was digging
postholes to straighten the fence line at the southeast corner.  After Foster informed Cullins that Cullins
did not own the property, he ceased digging. 
In 1996, the Cullinses asked Billie Foster to execute a corrected deed,
which would have extended the Cullinses= eastern
boundary to the fence line.  She declined
to do so.

The land between the Cullinses= eastern
boundary and the fence (i.e., the Adisputed
property@)
contained a grove of pine trees, cultivated by Foster=s
father.  From 1995 until 2002, the Cullinses
used the area and placed a barbecue and trailer for their lawn mower
there.   In 2002, the Cullinses began
removing the pine trees, a process which continued from about April 21 until
May 16.  On May 16, 2002, Foster
destroyed part of the fence; and on May 24, 2002, allegedly staked out a new
line.

On May 28, 2002, the Cullinses sued Foster,
asserting multiple causes of action, including a claim to the property by
adverse possession, mistake, and trespass. 
They sought unspecified actual and consequential damages and declaratory
and injunctive relief.  Foster
counterclaimed, alleging trespass to try title, trespass, conversion, and a
claim under Texas Natural Resources Code section 151.051[4]
and sought judgment for title to, and possession of, the disputed area,
monetary damages, attorney=s fees,
and injunctive relief.








On June 5, 2002, Billie Foster executed a warranty
deed granting Foster the tract of land immediately east of the Cullinses=
property.  The deed had an Aeffective@ date of
April 29, 1996.[5]

At her deposition, Billie Foster testified she
sold Foster the property in November 1995 for $6,000.  Billie Foster also recalled that the payments
were due on a monthly basis, but did not recall how much Foster paid or how
many months he paid.  She recalled the
purchase price had been paid in full around April 1996.  She did not have a written agreement with
Foster to sell the property until the first part of 2002.

When deposed, Foster testified he paid Aaround
$250.00 a month@ for the
property until it was paid off.  He could
not recall the purchase price or how many payments he made. He testified he
made payments until he Agot it
paid off.  I=m not
sure how the math works out on that.@  In his affidavit, Foster attested, AOn or
about April 29, 1996, Mrs. Billie Foster sold the eastern tract to me.  Since that time, I have been the owner in fee
simple of that portion of the property.@








Foster moved for summary judgment on his
counterclaims and against the Cullinses on their claims.  Regarding the Cullinses= adverse
possession claim, he argued the Cullinses had not paid property taxes and did
not obtain the property under a duly registered deed.  Regarding the claim of mistake, he argued the
cause of action did not apply to unilateral mistake and was barred by
limitations.  Regarding trespass and
declaratory judgment, he argued he conclusively proved the Cullinses had no
right to the disputed area via deed or adverse possession.  In relation to his counterclaims, Foster
complained about the Cullinses= use of
the land and their cutting the trees.  He
also asserted his ownership of the property by virtue of the June 5, 2002
deed.  In support of his motion, Foster
provided the following documents: (1) the November 6, 1995 warranty deed from
Billie Foster to the Cullinses with the attached legal description; (2) a
November 2, 1995 survey showing the fence line in relation to the area
described by metes and bounds in the November 6, 1995 warranty deed; (3) a
letter reflecting the Cullinses= 1996
request that Billie Foster execute a correction deed which would have included
the property extending to the fence; (4) a letter indicating Billie Foster
declined to execute a correction deed without additional consideration; (5) the
June 5, 2002 deed; and (6) deposition testimony and affidavits relating to the
sale and transfer of the property described in the June 5, 2002 deed.

The Cullinses responded to Foster=s summary
judgment motion and also moved for partial summary judgment against Foster on
his counterclaims.  They alleged that the
June 5, 2002, deed was ineffective to vest ownership in Foster at the time of
their injurious actions on the property. 
Foster responded, in part, that he had obtained equitable title to the disputed
property when he completed all payments to Billie Foster.

The trial court granted summary judgment in favor
of Foster Aon all defensive issues@ against
the Cullinses and on Foster=s
counterclaims of trespass, trespass to try title, conversion, and violation of
Texas Natural Resources Code section 151.051.[6]  The damages and attorney=s fees
questions were then submitted to a jury. 
A non-unanimous jury found the following damages: loss of the trees= market
value at the mill, $1,000; cost of cure, $4,700; loss of the trees=
intrinsic value, $0.00; loss of past rental value of the land, $0.00.  The jury found $5,000 to be a reasonable
attorney=s fee
through trial of the case, but found zero fees for an appeal to the court of
appeals, a petition to the supreme court, or grant of the petition.








Foster filed a request for attorney=s fees
and a motion for judgment notwithstanding the verdict (JNOV).  The trial court rendered judgment on the
damages verdict[7]
and awarded Foster the following attorney=s fees:
$15,000 through trial; an additional $5,000 if the case were appealed to the
court of appeals; and an additional $5,000 if a petition for review were filed
in the supreme court.

The Cullinses filed a motion for new trial.  Foster filed a motion for new trial and
motion to modify the judgment.  The
motions were overruled by operation of law. 
Both parties appeal.

II. 
Discussion

A.        Summary
Judgment Issues

1.         The
Cullinses= Ten-year adverse possession claim

In their first issue, the Cullinses argue the
trial court erred in granting summary judgment against them on all their claims
because Foster did not move for summary judgment on their claim of adverse
possession under the ten-year statute.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 16.026
(Vernon 2004).  Foster argues (1) the
Cullinses did not plead a claim under the ten-year statute, (2) he addressed
the ten-year statute in his reply to the Cullinses= response
to his summary judgment motion, and (3) the Cullinses= claim
fails for the reasons set forth in his reply.

A summary judgment movant=s attempt
to address claims in a reply to the non-movant=s
response is insufficient to comport with the requirements of Rule 166a(c).  Guest v. Cochran, 993 S.W.2d 397, 402B03 (Tex.
App.CHouston
[14th Dist.] 1999, no pet.); see Tex.
R. Civ. P. 166a(c).  Accordingly,
we consider whether the Cullinses pleaded a claim under the ten-year statute.








Foster did not specially except to the Cullinses=
pleadings; therefore, we construe the pleadings liberally in favor of the
Cullinses and uphold their petition as to a cause of action reasonably inferred
from what is stated even if an element of the claim is not specifically
alleged.  Gillespie v. Scherr, 987
S.W.2d 129, 132 (Tex. App.CHouston
[14th Dist.] 1998, pet. denied) (citing Boyles v. Kerr, 855 S.W.2d 593,
601 (Tex. 1993)).  The Cullinses= adverse
possession claim reads as follows:

Alternatively, Plaintiffs and Plaintiffs= predecessors in interest
have been in actual, open notorious, exclusive, hostile, and adverse possession
of the entirety of the property encompassed by the fencing along the perimeter
of Plaintiffs= Property since prior to
November 6, 1995, which precedes the filing of this lawsuit by more than five
(5) years.  Plaintiffs have used and
enjoyed the property, paid taxes and held all of said real property under a
claim of right, in good faith, and under a duly recorded Warranty Deed (Exhibit
AA@) purporting to convey
this land.

 

The
pleading contains no reference to ten years; instead, the specific reference is
to five years.[8]  Additionally, the pleading lists elements of
the five-year adverse possession statute, which provides:

A person must bring suit not later than five years after the day the
cause of action accrues to recover real property held in peaceable and adverse
possession by another who:

(1) cultivates, uses, or enjoys the
property;

(2) pays applicable taxes on the property;  and

(3) claims the property under a duly
registered deed.

 

Tex. Civ. Prac. & Rem. Code Ann. '
16.025(a) (Vernon 2004).








Even construing the pleadings liberally in favor
of the Cullinses, we hold they do not set forth a cause of action under the
ten-year statute.  We overrule the
Cullinses= first issue.

2.         Summary
judgment on the Cullinses= claims and Foster=s counterclaims

a.         Issues and standard of review

In their second and third issues, respectively,
the Cullinses argue the trial court erred (a) in granting summary judgment
against them on their claims for adverse possession, trespass, mistake and
declaratory relief, and (b) in granting summary judgment in favor of Foster on
his counterclaims for trespass, trespass to try title, conversion, and
violations of Texas Natural Resources Code section 151.051.  The Cullinses= motion
for summary judgment challenged the proof of ownership (the June 5, 2002 deed)
Foster relied on in part to establish his counterclaims.[9]

When parties file competing motions for summary
judgment and the trial court grants one motion and denies the other, this court
may consider the propriety of the denial as well as the grant.  Lidawi v. Progressive County Mut. Ins. Co.,
112 S.W.3d 725, 729 (Tex. App.CHouston
[14th Dist.] 2003, no pet.).  If the
issue raised is based on undisputed and unambiguous facts, we may determine the
question presented as a matter of law.  Id.  We may then either affirm the judgment or
reverse and render the judgment the trial court should have rendered, including
one denying both motions.  Id.  If, however, resolution of the issues rests
on disputed facts, summary judgment is inappropriate, and we should reverse and
remand for further proceedings.  Id.








The movant for summary judgment has the burden to
show there is no genuine issue of material fact and he is entitled to judgment
as a matter of law.  Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  When deciding whether there is a disputed
material fact issue precluding summary judgment, we take as true all evidence
favorable to the non‑movant, and indulge every reasonable inference and
resolve any doubts in his favor.  Id.
at 548B49.

A plaintiff moving for summary judgment must
conclusively prove all essential elements of its claim.  MMP, Ltd. v. Jones, 710 S.W.2d 59, 60
(Tex. 1986); see Geiselman v. Cramer Fin. Group, Inc., 965 S.W.2d 532,
535 (Tex. App.CHouston [14th Dist.] 1997, no
writ).  A defendant moving for
traditional summary judgment assumes the burden of showing the plaintiff has no
cause of action against him as a matter of law. 
Levesque v. Wilkens, 57 S.W.3d 499, 503 (Tex. App.CHouston
[14th Dist.] 2001, no pet.).  Traditional
summary judgment for a defendant is proper only when the defendant negates at
least one element of each of the plaintiff=s
theories of recovery, or pleads and conclusively establishes each element of an
affirmative defense.  Sci. Spectrum,
Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).

b.         Challenge to summary
judgment against the Cullinses on their claims

 

In their second issue, the Cullinses challenge the
summary judgment against them on all of their affirmative claims.  The Cullinses= claims
included adverse possession and the derivative claims for trespass and
declaratory relief.  In addition, the
Cullinses pleaded mistake.








Adverse possession and derivative claims.  To establish a claim of adverse possession
under the five-year statute, a party must claim the property under a duly
registered deed.  Tex. Civ. Prac. & Rem. Code Ann. '
16.025(a)(3); McAllister v. Samuels, 857 S.W.2d 768, 776 (Tex. App.CHouston
[14th Dist.] 1993, no writ).  AIn order that the five years statute
be invoked, it is . . . essential that the land described in the deed should
coincide with the land held in possession. . . .@  Brokel v. McKechnie, 69 Tex. 32, 33, 6 S.W. 623, 624 (Tex. 1887); see
McAllister v. Samuels, 857 S.W.2d 768, 776 (Tex. App.CHouston
[14th Dist.] 1993, no writ) (rejecting plaintiffs= adverse
possession claim when their deed did not purport to show their ownership of any
portion of lot which they claimed by adverse possession).  The following summary judgment evidence
conclusively establishes that the 1995 warranty deed, the basis of the
Cullinses adverse possession claim, does not coincide with the land they claim
to hold in possession: (1) the metes and bounds description of the property in
the 1995 warranty deed from Billie Foster to the Cullinses; (2) the survey
dated November 2, 1995, showing the location of the fence in relation to the
property defined by the metes and bounds description; (3) the Cullinses= 1996
request to Billie Foster that she execute a correction deed that would have
included the property extending to the fence; and (4) Billie Foster=s refusal
to do so.

With the exception of mistake, all the Cullinses= claims
rest on their adverse possession claim. 
Because that claim fails as a matter of law,  their remaining claims resting on adverse
possession also fail.

Mistake.  In the trial court, the Cullinses
alternatively pleaded mistake and sought reformation of their deed Ashould
the Court find that Plaintiffs= deed did
not convey title to the entirety of the property encompassed by the fencing
along the boundaries of Plaintiffs=
Property.@ 
In his summary judgment motion, Foster defended against mistake on two
grounds: (1) the action was outside the four year statute of limitations, and
(2) the doctrine did not apply to unilateral mistake.[10]








The four‑year statute of limitations governs
a suit for reformation of a deed.  Brown
v. Havard, 593 S.W.2d 939, 943 (Tex. 1980); see Tex. Civ. Prac. & Rem. Code Ann. ' 16.051
(Vernon 2004).  The discovery rule may
extend limitations until the party seeking reformation knew, or in the exercise
of reasonable diligence should have known, of the mistake in the deed.  Escamilla v. Estate of Escamilla, 921
S.W.2d 723, 727 (Tex. App.CCorpus
Christi 1996, writ denied).  The summary
judgment proof showing the Cullinses= 1996
request to Billie FosterCasking
her to execute a correction deed to include the property extending to the fenceCestablishes
the Cullinses knew of the alleged mistake in 1996.  They did not file suit until 2002, six years
later.  Thus, Foster conclusively
established that limitations bars the Cullinses= claim of
mistake.

In sum, Foster conclusively negated the Cullinses= adverse
possession claims and any derivative claims. 
He also conclusively established his limitations defense to reformation
based on mistake.  We overrule the
Cullinses= second issue.

c.         Foster=s
counterclaims








In their third issue, the Cullinses argue the
trial court erred in granting Foster=s motion
for summary judgment on Foster=s
counterclaims for trespass to try title, trespass, conversion and violation of
Natural Resources Code section 151.051. 
To establish each of his counterclaims, Foster was required to establish
title to, ownership of, or right of possession in, the disputed property.  See Tex. Nat. Res. Code Ann. ' 151.051 (Vernon Supp. 2004B05) (setting forth liability
of person who harvests timber without permission of Aowner@); Rogers
v. Ricane Enters., Inc., 884 S.W.2d 763, 768 (Tex. 1994) (stating plaintiff
in trespass to try title action must recover on strength of his own title); Hunt
v. Baldwin, 68 S.W.3d 117, 131 (Tex. App.CHouston
[14th Dist.] 2001, no pet.) (stating conversion is the unauthorized and
wrongful assumption and exercise of dominion and control over personal property
of another, to exclusion of, or inconsistent with, owner=s
rights); Russell v. Am. Real Estate Corp., 89 S.W.3d 204, 209 (Tex. App.CCorpus
Christi 2002, no pet.) (stating trespass requires only proof of interference
with the right of possession).[11]  Foster=s summary
judgment proof included (1) the June 5, 2002 deed, showing an Aeffective@ date of
April 29, 1996; (2) Foster=s
deposition testimony stating he paid around $250.00 per month, but could not
recall the purchase price or how many payments he made, (3) Foster=s
affidavit attesting that Billie Foster sold him the property A[o]n or
about April 29, 1996@; and (4)
Billie Foster=s deposition testimony that she
sold Foster the property in November 1995 for $6,000, recalled the purchase
price had been paid in full about April 1996, but did not have a written
agreement with Foster to sell the property until the first part of 2002 and
could not recall how much Foster paid or how many months he paid.

As they did in the trial court, the Cullinses
argue, in part, that the summary judgment proof established Foster Adid not
obtain a valid interest in the property or a valid conveyance until the grantor
[Billie Foster] executed and delivered the deed in June of 2002.@  In support, they cite Burgess v. Easley,
893 S.W.2d 87 (Tex. App.CDallas
1994, no writ).  In Burgess, the
court had to decide whether the parties were married when the husband=s rights
to the property at issue vested, thereby making the property community
property.  Id. at 90.  The court explained:

An instrument conveying real property Amust be subscribed and
delivered by the conveyor. . . .@  Tex.
Prop. Code Ann. ' 5.021 (Vernon 1984)
(emphasis added).  Without evidence to
the contrary, the law presumes a grantor delivers a deed on the date of
execution and acknowledgement.  Hicks
v. Loveless, 714 S.W.2d 30, 32 (Tex. App.CDallas 1986, writ ref=d n.r.e.); Lichtenstein
v. F & M Nat=l Bank, 372 S.W.2d 716, 718
(Tex. Civ. App.CDallas 1963, no
writ).  When a grantor places a deed
within the grantee=s control, intending it to
operate as a conveyance, the grantee=s rights in the property
vest.  See Steffian v. Milmo Nat=l Bank, 69 Tex. 513, 518, 6 S.W.
823, 824 (1888).  The grantor=s delivery of a deed is as
necessary as the grantor=s signing of a deed.  See id; McGowen v. Montgomery,
248 S.W.2d 789, 792 (Tex. Civ. App.CAmarillo 1952, no
writ).  What constitutes delivery of a
deed is a question of law.  Whether there
has been a delivery is a question of fact. 
Kuhn v. Downs, 208 S.W.2d 154, 155 (Tex. Civ. App.CWaco 1948, writ ref=d n.r.e.).

 

Id. at 90B91.








In the trial court, Foster did not dispute that
there was Ano document immediately filed in
any official governmental records in April 1996 (or for several years
thereafter) to clarify that he assumed control of the Property upon completing
all of the required payments.@  Foster argued, however, he had obtained Aequitable
title@ when he
completed all payments.

On appeal, Foster does not reassert his equitable
title argument.  Instead, he maintains
that the Cullinses are reiterating Ared
herrings previously made at the trial court level.@  He refers to the Cullinses= having Aimplied
there is something sinister about the fact that the property transaction
between [a]ppellee and his mother occurred in 1996, but the appropriate deed
reflecting that fact was not filed until 2002.@  Finally, without citation to authority,
Foster contends the Cullinses, by virtue of having sued him and not Billie
Foster, are estopped from arguing the invalidity of that transaction.

A plaintiff in a trespass to try title suit may
rely on a title acquired after the institution of suit, if he asserts such
title by an amended pleading.  Ballard
v. Carmichael, 83 Tex. 355, 359B60, 18
S.W. 734, 735 (1892); Young v. Harbin Citrus Groves, 130 S.W.2d 896, 898
(Tex. Civ. App.CSan
Antonio 1939, writ ref=d).  By the time Foster filed his amended
counterclaim on August 30, 2002, he had legal title to the property described
in the June 5, 2002 deed.

By the June 5, 2002 deed, Billie Foster conveyed
to FosterCwith the exception of two tractsCa piece
of land described by metes and bounds. 
The two excepted tracts were (1) the tract she had conveyed to the
Cullinses, and (2) a tract Foster=s father
had previously bequeathed to Foster.  As
discussed above, Foster=s summary
judgment proof conclusively establishes Billie Foster did not convey the
disputed property to the Cullinses.  The
disputed property is therefore included in the description of the property
conveyed to Foster by the June 5, 2002 deed. 
We conclude Foster conclusively proved ownership of the disputed
property as of June 5, 2002.  Therefore,
in his action for trespass to try title, he was entitled to title to, and
possession of, the disputed area, as prayed for in his amended counterclaim.








Foster, however, also claimed rental damages by
virtue of his trespass to try title action. 
In addition, he pleaded and sought summary judgment on claims for
conversion, trespass, and violation of Texas Natural Resources Code section
151.051, which provides for damages for unauthorized harvesting of timber.  See Tex. Nat. Res. Code Ann. ' 151.051(a).  It is undisputed the Cullinses= actions
giving rise to these claims occurred before June 5, 2002.

A[A]
plaintiff in a trespass to try title suit may recover on the strength of an
equitable title as well as a legal one.@  Neeley v. Intercity Mgmt. Corp., 623
S.W.2d 942, 951 (Tex. App.CHouston
[1st Dist.] 1981, no writ) (citing Johnson v. Wood, 138 Tex. 106, 157
S.W.2d 146 (1941)).  AEquitable
title may be shown when the plaintiff proves that he has paid the purchase
price and fully performed the obligations under the contract.  Upon such performance, he becomes vested with
an equitable title to the property which is sufficient to allow him to maintain
his action in trespass to try title.@  White v. Hughs, 867 S.W.2d 846, 849
(Tex. App.CTexarkana 1993, no writ) (citing Johnson,
138 Tex. 106)).[12]








With regard to Foster=s claims
based on injury to the disputed property, the question is whether Foster
conclusively proved he owned the disputed property at the time the Cullinses
committed the acts injuring that property. 
See Ceramic Tile Int=l, Inc.
v. Balusek, 137 S.W.3d 722, 724 (Tex. App.CSan
Antonio 2004, no pet.) (stating right to sue for the injury to real property is
a personal right belonging to the person owning the property at the time of the
injury).  We conclude Foster=s summary
judgment proof did not conclusively establish he had equitable title to, and
thereby ownership of, the disputed property at the time of the Cullinses=
allegedly injurious acts.

Foster presented the following summary judgment
proof supporting an inference he had equitable title by April 1996: (1) Billie
Foster=s
deposition testimony recalling Foster had paid the purchase price in full
around April 1996; (2) Foster=s
affidavit, in which he stated he had been owner of the property since April 29,
1996; and (3) the June 5, 2002 deed showing an Aeffective@ date of
April 29, 1996.

Foster=s summary
judgment proof, however, also included the following: (1) Billie Foster=s
deposition testimony that she sold Foster the property in November 1995 for
$6,000, but could not recall (a) the amount of Foster=s monthly
payments, (b) how much he paid, or (c) how many months he paid; and (2) Foster=s
deposition testimony that he paid Aaround
$250.00 a month@ for the
property until it was paid off, but also stating he could not recall (a) the
purchase price or (b) how many payments he made.  If Foster purchased the property in November
1995 for $6,000 and paid $250.00 per month, he would have paid off the purchase
price around November 1997, well after April 1996, although still before the
Cullinses cut the trees.

Finally, the summary judgment proof included (1)
Billie Foster=s deposition testimony that she
did not have a written agreement with Foster to sell the property until the
first part of 2002; and (2) the June 5, 2002 deed, which was executed on that
date.  This proof, coupled with the
conflicts in the deposition testimony set out above, supports yet a third
inference, i.e., that Foster did not have either equitable or record title of
the disputed property until June 2002, after the injurious acts of which Foster
complained.








A fact issue exists when conflicting inferences
may be drawn from uncontroverted summary judgment proof.  Mauricio v. Tex. Builders Ins. Co.,
929 S.W.2d 638, 640 (Tex. App.CSan
Antonio 1996, no writ); see also Bottoms v. Smith, 923 S.W.2d 247, 250
(Tex. App.CHouston [14th Dist.] 1996, no
writ) (stating fact issue is presented if one may draw conflicting inferences
from deposition and affidavit of same party in opposition to summary judgment
motion).  Thus, given the conflicting
inferences set forth above, there is a genuine issue of material fact regarding
Foster=s
ownership of the disputed property when the injurious acts occurred.  Accordingly, we hold the trial court erred
when it granted summary judgment in favor of Foster on his claims for
conversion, trespass, and violation of Texas Natural Resources Code section
151.051, and his claim for trespass to try title to the extent he was seeking
relief other than title to, and possession of, the disputed property.

We sustain the Cullinses= third
issue with regard to Fosters= claims
for conversion, trespass, and violation of Texas Natural Resources Code section
151.051, and his claim for trespass to try title to the extent he was seeking
relief other than title to, and possession of, the disputed property.  We remand those claims to the trial court.

We overrule the Cullinses= third
issue regarding Foster=s claim
for title to, and possession of, the disputed property.  We affirm the trial court=s
judgment to the extent it awarded Foster possession of, and title to, the
disputed property.

B.        Damages
Issue

In his first issue in his cross-appeal, Foster
challenges the trial court=s
rendition of judgment on the jury=s damages
verdict.  As set forth above, we have
concluded the trial court erred in granting summary judgment in favor of Foster
on the liability claims giving rise to the damages he now challenges.  It is therefore premature to address the
damages issues.








C.        Attorney=s Fees[13]

1.         Introduction

The jury returned a verdict finding $5,000 to be
reasonable attorney=s fees
for prosecuting the trespass-to-try title claim and adverse-possession claim
through the trial of the case.  The jury
found zero dollars for an appeal to the court of appeals, a petition to the
supreme court, or the grant of a petition by the supreme court.  Following post-verdict motions, the trial
court rendered judgment awarding Foster attorney=s fees of
$15,000 through trial, an additional $5,000 if there were an appeal to the
court of appeals, and an additional $5,000 if a petition for review were filed
in the supreme court.

In his second issue, Foster argues, AThe trial
court erred in failing to award the proper amount of attorney=s fees to
Cross-Appellant Foster.  The final
judgment entered by the trial court is erroneous as a matter of law as well as
being against the great weight and preponderance of the evidence.@[14]  He requests this court to render judgment for
attorney=s fees in
the amount to which his expert testified, i.e., $47,707.19 for services
through trial, $12,000 for the current appeal, $7,000 if a petition for review
is filed, and $5,000 if the petition is granted.  In the alternative, he requests a new trial
on all damages claims, including attorney=s fees.








In their fifth issue, the Cullinses argue that,
because the reasonableness of attorney=s fees is
a fact issue for the jury to decide, the trial court erred in disregarding the
jury=s verdict
on attorney=s fees and granting Foster=s motion
for judgment not withstanding the verdict. 
The Cullinses also argue the trial court erred (1) in awarding any
fees because Foster failed to segregate the causes of action for which fees are
recoverable from those for which fees are not recoverable (issue four), and (2)
in refusing to allow the Cullinses= attorney
to testify and rebut Foster=s
evidence on attorney=s fees
(issue six).

We first address the Cullinses=
challenge to the alleged failure to segregate. 
We then turn to Foster=s
challenges to the JNOV and to the factual sufficiency of the evidence
supporting the jury=s
verdict.  Finally, we address the
Cullinses= argument for reinstatement of
the jury=s
verdict.  Because of our resolution of
these issues, we need not address the Cullinses=
challenge to the exclusion of their evidence.

2.         The Purported Failure to Segregate

In issue four, the Cullinses argue the trial court
erred in awarding any fees because Foster failed to segregate recoverable from
non-recoverable fees.  The Cullinses,
however, did not object at trial to the expert=s
testimony or to the jury instruction on the grounds of failure to segregate.[15]  They therefore waived this complaint.  See Green Int=l, Inc.
v. Solis, 951 S.W.2d 384, 389 (Tex. 1997); Hruska v. First State Bank,
747 S.W.2d 783, 785 (Tex. 1988); Cont=l
Dredging, Inc. v. De-Kaizered, Inc., 120 S.W.3d 380, 397 (Tex. App.CTexarkana,
2003, pet. denied).  We overrule the
Cullinses= issue four.

3.         The Judgment Notwithstanding the Verdict

a.         Legal
standards and standard of review








In his second issue, Foster argues, in part, that
the trial court erred in not granting his JNOV, requesting that the court award
attorney=s fees in
the amount to which his expert testified. 
Foster pleaded
for attorney=s fees under Texas Civil Practice and
Remedies Code section 16.034, which provides in relevant part:

In a suit for the possession of real property between a person claiming
under record title to the property and one claiming by adverse possession, if
the prevailing party recovers possession of the property from a person
unlawfully in actual possession, the court may award costs and reasonable
attorney=s fees to the prevailing party.

 

Tex.
Civ. Prac. & Rem. Code Ann. ' 16.034(a) (Vernon 2004).

Section 16.034 grants the trial court discretion
to award attorney=s
fees.  Pierce v. Gillespie, 761
S.W.2d 390, 397 (Tex. App.CCorpus
Christi 1988, no writ); see also Terrill v. Tuckness, 985 S.W.2d 97, 111
(Tex. App.CSan Antonio 1998, no pet.)
(stating, under section 16.034, attorneys fees may, at trial court=s
discretion, be awarded in suits for the possession of real property involving
claim under record title).  Ordinarily,
an appellate court will not reverse an award of attorney=s fees
resting within the sound discretion of the trial court without a showing of an
abuse of that discretion.  See
Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 881 (Tex. 1990) (per
curiam).  Nevertheless, even though the
trial court has discretion in awarding attorney=s fees,
the reasonableness of the fees is generally a question of fact for the jury=s
determination.  See Bocquet v. Herring,
972 S.W.2d 19, 21 (Tex. 1998) (construing Texas Civil Practice and Remedies
Code section 37.009, which provides Acourt may
award costs and reasonable and necessary attorney=s fees as
are equitable and just@); see
also Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997)
(stating award of appellate attorney fees is question of fact for the jury, and
declining to disturb jury=s
decision to award less than was requested).








A JNOV on the question of reasonable fees is
proper only if no evidence supports the jury=s
finding.  See Mancorp, Inc. v. Culpepper,
802 S.W.2d 226, 227B28 (Tex. 1990); Stamp‑Ad,
Inc. v. Barton Raben, Inc., 915 S.W.2d 932, 938 (Tex. App.CHouston
[1st Dist.] 1996, no writ) (applying Mancorp standard in reviewing JNOV
on attorney=s fees).  No evidence exists, and
the trial court should render a JNOV, when the record
discloses one of the following: (1) a complete absence of evidence of a vital
fact; (2) the trial court is barred by rules of law or evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a scintilla of evidence; or (4)
the evidence establishes conclusively the opposite of a
vital fact.  Juliette Fowler Homes,
Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 666 n. 9 (Tex. 1990).

If the jury makes a negative finding in answer to
a question, it means the party with the burden of proof has failed to carry its
burden.  Burns v. Resolution Trust
Corp., 880 S.W.2d 149, 154 (Tex. App.CHouston
[14th Dist.] 1994, no writ).  A trial
court may not properly disregard a jury=s
negative finding and substitute its own affirmative finding unless the evidence
conclusively establishes the issue.  Id.;
see also Cain v. Pruett, 938 S.W.2d 152, 160 (Tex. App.CDallas
1996, no writ) (stating party with burden of proof at trial is entitled to JNOV
on a particular issue only if evidence establishes that issue as a matter of
law).

To determine whether the JNOV on attorney=s fees
was proper in this case, we review only the evidence supporting the jury=s finding
and disregard all contrary evidence.  Sherman
v. First Nat=l Bank, 760
S.W.2d 240, 242 (Tex. 1988).  If more
than a scintilla of evidence supports the jury finding, the JNOV is
erroneous.  Garcia v. Ins. Co. of Pa.,
751 S.W.2d 857, 858 (Tex. 1988). 
Furthermore, if the evidence is factually insufficient, as opposed to
legally insufficient, the trial court may not grant a JNOV, but is limited to
granting a motion for new trial. Alm v. Aluminum Co. of Am., 717 S.W.2d
588, 594 (Tex. 1986).

b.         The
evidence before the jury








The only evidence on attorney=s fees
was the testimony of Kevin McEvily, a Houston lawyer, who testified regarding
the reasonableness of the fees attorney Christopher Ashby=s firm
had charged Foster.  McEvily testified he
had examined Ashby=s bills,
looked over the case file, and questioned Ashby about what was involved in the
preparation of the case.  According to
McEvily, Ashby was billing Foster $200 per hour, and Foster=s bill
through November 2002 amounted to $46,225.05.

McEvily testified he asked Ashby whether Ashby had
segregated out charges for which attorney=s fees
would not be appropriately charged to Foster=s
adversary.  McEvily testified Ashby had
segregated out those fees, resulting in the $46,000 being reduced to $41,707.19
for charges up to trial.  Adding the fees
incurred at trial raised the $41,707.10 to $47,707.19.  McEvily then testified Foster would incur an
additional $12,000 in fees if the case were appealed to the court of appeals,
another $7,000 if the Cullinses filed a petition for review, and another $5,000
if the supreme court granted review. 
McEvily also testified that the time spent and the charges billed were
reasonable and necessary for the services performed.

On cross-examination, McEvily testified it would
not have been appropriate for him to have undertaken the fee segregation, and
he had relied on what Ashby had told him in that regard.  Although McEvily Areviewed
the bills thoroughly,@ he
admitted he did not review all the documents in the case.  It was McEvily=s
understanding that attorney=s fees
were appropriate for a successful client when there was a claim of adverse
possession and, therefore, trespass to try title.  Declaratory judgment was the other claim he
saw in the counter-petition for which he believed attorney=s fees
might be appropriate.[16]  McEvily also testified he did not know about
claims for which Foster could not ask for attorney=s fees,
stating A[t]here
might be a claim that was made by the Cullins [sic] for which the defense by
[Foster] may not be appropriate for the recovery of attorney=s fees.@  McEvily testified Athe
segregation was a matter that took place from several of the invoices, and I
can tell you what the sum total that has been segregated, but for a specific
item, I can=t tell you.@








c.         Foster=s argument he is entitled,
as a matter of law, to his requested attorney=s fees

 

Citing Ragsdale, Foster argues McEvily=s
testimonyCthe only testimony on attorney=s feesCwas Anot
contradicted by any other witness, or attendant circumstances, [was] clear,
direct and positive, and free from contradiction, inaccuracies, and
circumstances tending to cast suspicion thereon,@ and,
therefore, should be Ataken as
true, as a matter of law.@  Ragsdale, 801 S.W.2d at 882.  The Ragsdale court, however, also
stated: A[W]e do
not mean to imply that in every case when uncontradicted testimony is offered
it mandates an award of the amount claimed.@  Id. 
The court explained, AFor
example, even though the evidence might be uncontradicted, if it is
unreasonable, incredible, or its belief is questionable, then such evidence
would only raise a fact issue to be determined by the trier of fact.@  Id.[17]

The Cullinses argue McEvily=s
testimony was contested and discredited through cross-examination.  We agree.








As instructed, the jury could consider the
following factors in determining a reasonable fee:  (1) Athe time
and labor involved, the novelty and difficulty of the questions involved, and
the skill required to perform the legal service properly;@ (2) Athe
likelihood that the acceptance of the particular employment will preclude other
employment by the lawyer;@ (3) Athe fee customarily charged in the
locality for similar legal services;@ (4) Athe
amount involved and the results obtained;@ (5) Athe time
limitations imposed by the client or by the circumstances;@ and (6) Athe
experience, reputation, and ability of the lawyers performing the services.@[18]  The jury was also limited to determining a
reasonable fee for the trespass-to-try
title claim and adverse-possession claims.[19]

Although the Cullinses did not object to McEvily=s
testimony on the ground that he failed to segregate the permissible fees from
those not allowed, the Cullinses vigorously cross-examined McEvily on that
issue, eliciting McEvily=s
admission that he had not reviewed all the documents in the case and could not
say what amount had been segregated out for a specific item.[20]  McEvily also testified he did not know for
which claims Foster could not ask for attorney=s fees,
stating, A[t]here might be a claim that was
made by the Cullins [sic] for which the defense by [Foster] may not be
appropriate for the recovery of attorney=s fees.@  Finally, McEvily admitted the amount in
controversy was one factor to consider; he acknowledged the land had minimal
rental value; and, when asked whether he was aware the value of the trees was
in the range of $2,200 to $3,000, stated he understood the value of the
trees.  The jury had previously heard
testimony from Foster=s experts
that the rental value of the land was $100 per month, the market price at the
mill of the trees was close to $3,000, and the cost to cure was $11,300.  The Cullinses impeached this testimony on
cross examination by eliciting an admission that the parcel was landlocked and
the $100 rental was contingent on access from a major road, and if the trees
were diseased, that factor would affect their value.








We conclude McElvily=s
testimony did not rise to the level that would permit an award of an amount of
attorney=s fees as
a matter of law under Ragsdale.  See
Disbrow v. Healey, 982 S.W.2d 189, 193B94 (Tex.
App.CHouston
[1st Dist.] 1998, pet.) (agreeing attendant circumstances created sufficient
basis for the jury to award amount less than amount claimed by plaintiff=s
attorney when (1) attorney testified about what he Aunderstood@ were
reasonable attorney=s fees in
county for another attorney who previously worked on client=s case;
(2) attorney=s testimony was general, not
concise or clear, with no itemization of time spent on various items; (3)
attorney=s fees
were more than twice the amount of damages client claimed; (4) attorney did not
allocate fees between the claims against the two defendants; and (5) attorney=s fees
were more than twice the amount of one of the defendant=s fees); see
also Inwood N. Homeowners= Ass=n v.
Wilkes, 813 S.W.2d 156, 158 (Tex. App.CHouston
[14th Dist.] 1991, no writ) (holding amount in controversy in case, $649.44,
was attendant circumstance tending to cast suspicion on the uncontradicted
evidence); CPS Int=l, Inc.
v. Harris & Westmoreland, 784 S.W.2d 538, 543 (Tex. App.CTexarkana
1990, no writ) (concluding, when attorney testified regarding hourly rate and
approximate hours spent on case but did not offer evidence of exact number of
hours,  testimony did not offer such
exactness as to warrant JNOV increasing jury=s award
of $5,400 to $7,000).

We overrule Foster=s second
issue to the extent he seeks rendition of judgment.

4.         Factual Insufficiency of the Evidence

In his second issue, Foster also invokes language
relevant to a factual sufficiency review, i.e., Aagainst
the great weight and preponderance of the evidence and . . . manifestly unjust,@ and
requests, in the alternative, a new trial on all damages issues, including
attorney=s
fees.  Foster=s
argument may fairly be read as a challenge to the factual sufficiency of the
evidence to support the jury=s
verdict.  See Tex. R. App. P. 38.1(e) (providing that
A[t]he
statement of an issue or point will
be treated as covering every subsidiary question that is fairly included@); see also Tex. R. App. P. 38.9 (directing
appellate courts construe briefing rules liberally).








In reviewing a factual sufficiency challenge to a
finding on reasonable attorney=s fees,
we examine all of the evidence and set aside the finding only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986); see Cantu v. Moore, 90 S.W.3d 821, 825 (Tex. App.CSan
Antonio 2002, pet. denied) (applying Cain standard to factual
sufficiency challenge to award of attorney=s fees
resulting from breach of a settlement agreement).  For the following reasons, we conclude the
evidence is factually insufficient to support the jury=s verdict
of $5,000 for services through trial and no fees for appeal or petition to the
supreme court.

First, although the Cullinses attacked McEvily=s
testimony for lack of segregation of fees and raised the issue of the amount in
controversy, the Cullinses did not elicit evidence directly casting doubt on
the reasonableness of the $200 hourly fee. 
At that rate, an award of $5,000 reimburses Foster=s
attorney for only twenty-five hours of work. 
Second, even if the evidence establishing the relatively small amounts
in controversy undercut the reasonableness of the $200 hourly fee, a fee of
half that amount would still represent only fifty hours of work.  Finally, although McEvily did not segregate
appellate fees among the various claims, the award of no fees for appeal
overlooks the probability that at least some appellate time would be
attributable to the trespass-to-try
title and adverse-possession claims.

The jury=s verdict
on attorney=s fees is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  See Cain, 709 S.W.2d at 176.  We therefore sustain Foster=s second
issue to the extent he seeks a remand for a new trial on the issue of attorney=s fees.

5.         The Cullinses= Argument for Reinstatement of the Jury Verdict








In their issue five, the Cullinses contend the
trial court erred in disregarding the jury=s verdict
and in granting Foster=s motion
for JNOV.  As discussed above, we agree
the trial court erred in rendering the JNOV. 
To the extent the Cullinses may be arguing that this court should render
judgment on the jury verdict, however, their argument is without merit.  The Cullinses state only that the amount of
attorney=s fees is
a fact issue for the jury to decide, but address neither the legal nor factual
sufficiency of the evidence to support the jury verdict.  Because, as discussed above, we conclude the
evidence is factually insufficient to support the jury=s verdict
we decline to reinstate it.  Accordingly,
we overrule the Cullinses= issue
five.

III.  Conclusion

Having determined Foster did not conclusively
prove his ownership of the disputed parcel at the time the Cullinses committed
the injurious acts of which Foster complained, we sustain the Cullinses= issue
challenging the summary judgment in favor of Foster on liability for trespass,
conversion, violation of Texas Natural Resources Code section 151.051, and
trespass to try title to the extent Foster sought remedy other than
title to, and possession of, the disputed parcel.  We reverse the judgment in favor of Foster on
those claims.

Having determined Foster conclusively proved his
ownership of the disputed property at the time of trial, we overrule the
Cullinses= issues challenging the summary
judgments against them on their claims and in favor of Foster on his trespass
to try title claim to the extent Foster sought title to, and possession of, the
disputed parcel.  We affirm the trial court=s
judgment as to those claims. 

Given our resolution of the Cullinses= issues
challenging the summary judgment on liability, we do not reach Foster=s issue
challenging the award of damages. 

Having further determined Foster failed to
conclusively prove attorney=s fees in
the amount to which his expert testified, but that the evidence is factually
insufficient to support the amount the jury found to be reasonable, we overrule
Foster=s second
issue in part and sustain it in part.  We
reverse that portion of the judgment awarding Foster=s
attorney=s fees.








We sever Foster=s claims
for trespass, conversion, violation of Texas Natural Resources Code section
151.051, attorney=s fees, and trespass to try title to the
extent Foster sought remedy other than title to, and possession
of, the disputed parcel, and remand them to the trial court.

We overrule the Cullinses= issues in
which they argue for no attorney fees or reinstatement of the jury
verdict.  Given our resolution of Foster=s
challenges to the award of attorney=s fees,
we need not address the Cullinses=
challenge to exclusion of their evidence on that issue.

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Opinion filed July 28, 2005.

Panel
consists of Justices Yates, Edelman, and Guzman.

 

 

 











[1]  Tex. Nat. Res. Code Ann. ' 151.051 (Vernon Supp. 2004B05).





[2]  Given our
resolution of Foster=s claims, we do not reach the Cullinses=s issue relating to the exclusion of evidence at the
jury trial or Foster=s issue regarding rendition of judgment on the jury=s damages verdict.





[3]  According to
the legal description, the property comprises .9949 acres, more or less.  A survey map dated November 2, 1995 indicates
the property comprises .9952 acres.





[4]  Texas Natural
Resources Code section 151.051(a) provides:

 

A person who harvests standing timber with knowledge
that the harvesting is without the permission of the owner of the standing
timber and a person who causes another person to harvest standing timber
without the permission of the owner of the standing timber are jointly and
severally liable to the owner for damages in an amount equal to three times the
market price of the timber harvested without permission.

 

Tex. Nat. Res. Code Ann. ' 151.051(a) (Vernon Supp. 2004B05).





[5]  Foster=s father had bequeathed 7.36 acres out of a 9.36 acre
tract to Foster, bequeathing the remaining two acres to Billie Foster.  The June 5, 2002 deed from Billie Foster to
Foster describes the land  Billie Foster
is then conveying to Foster in terms of the 9.36 acres, except for those
portions of the 9.36 acres previously (1) bequeathed to Foster and (2) conveyed
to the Cullinses.





[6]  According to
the trial court=s judgment, Foster withdrew his counterclaims for
declaratory judgment and permanent injunction.





[7]  Per statute,
the trial court trebled the award of the trees= market
value at the mill, awarding Foster $3,000. 
See Tex. Nat. Res. Code
Ann. ' 151.051(a) (Vernon Supp. 2004B05).





[8]  The Cullinses
direct this court=s attention to the phrase, Asince prior to November of 1995@ as evidence they were tacking their claim to that of
their predecessor in interest, i.e., Billie Foster.  At that time Billie Foster owned the
adjoining property.  The Cullinses do not
explain how Billie Foster could have possessed the property adversely to
herself.





[9]  The Cullinses
alleged their motion was brought under both subsections (b) and (i) of Texas
Rule of Civil Procedure 166.  The only
summary judgment proof attached to their motion was the June 5, 2002 deed.





[10]  On appeal, the Cullinses do not
address the second ground.  See Rogers
v. Cont=l Airlines, Inc., 41 S.W.3d 196, 199 (Tex. App.CHouston [14th Dist.] 2001, no pet.)
(stating when summary judgment does not state the specific grounds on which it
was granted, party appealing from the judgment must show each of the independent
arguments alleged in the motion is insufficient to support the judgment).





[11]  At oral
argument, the Cullinses= counsel conceded ownership was the only liability
element at issue on Foster=s counterclaims.





[12]  In Graves
v. Diehl, this court referred to a conflict in the case law regarding
whether a purchaser receives equitable title from the date of the contract of
sale or whether he possesses only an equitable right, which does not ripen into
equitable title until he has fully performed under the contract.  958 S.W.2d 468, 471B72 (Tex. App.CHouston
[14th Dist.] 1997, no pet.).  In the
context of the nuisance suit that was then before it, the Graves court concluded
it need not resolve the conflict.  Id.
at 472.  The court did note, however,
that two courts had resolved the conflict to their satisfaction.  Id. at 472 n.4 (citing In re
Finley, 138 B.R. 181, 182B84 (Bankr. E.D. Tex. 1992) and Club Corp. of Am. v.
Concerned Prop. Owners for April Sound, 881 S.W.2d 620, 625B26 (Tex. App.CBeaumont
1994, writ denied)).  Both courts
concluded the purchaser under contract for deed possesses only an equitable
right, rather than equitable title.  See
Finely, 138 B.R. at 184; Club Corp. of Am., 881 S.W.2d at 626.  This is the rule set forth in Johnson v. Wood, 138 Tex. 106, 157 S.W.2d 146, 148
(1941). 
In the trial court, Foster argued he obtained equitable title when he
had made full payment for the property.





[13]  Despite
remanding Foster=s claims which rest on equitable title, we reach the
attorney=s fees issue in this case because, based on his record
title to the property, Foster prevailed against the Cullinses on their adverse
possession claims against him and, in part, on his trespass to try title action
against them.  See Tex. Civ. Prac. & Rem. Code Ann. ' 16.034(a) (Vernon 2004).





[14]  In his motion
for new trial, Foster argued the evidence conclusively proved the amounts of
reasonable attorney=s fees to which his expert testified and A[a]ny amounts awarded less than those figures are
against the great weight and preponderance of the evidence and are manifestly
unjust.@





[15]  The jury
instruction read, in part:  AWhat is a reasonable fee for the
services of FOSTER=S attorney in this case for
prosecuting the trespass-to-try title claim and adverse-possession claim?@  Thus, under
the instruction, the jury was limited to finding reasonable fees for the trespass-to-try title claim and
adverse-possession claims only.  As discussed below, the Cullinses, did
cross-examine Foster=s expert on the issue of segregation of fees.





[16]  As noted,
Foster withdrew his claim for declaratory judgment.  See note 6, supra.





[17]  We note
McEvily was not an interested witness in the case.  Nevertheless, Foster, in framing his issue,
relies on Ragsdale and so we analyze it under the standard set forth in
that case.  Ragsdale v. Progressive
Voters League, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam).





[18]  Cf. Arthur
Anderson v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997) (listing
eight factors).   





[19]  See
note 15, above.





[20]  Cf. Coastal
Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004)
(holding failure to object to expert testimony for lack of reliability does not
waive challenge to legal sufficiency of the evidence).